IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID MEYERS,                          :
                                       :     Case No. 4:CV-04-1123
              Plaintiff,               :
                                       :
        v.                             :
                                       :
SCHUYLKILL COUNTY PRISON,              :
GERALD BRITTON, in his official        :
capacity as Warden of Schuylkill       :     (Judge McClure)
County Prison,                         :
SCHUYLKILL COUNTY PRISON               :
BOARD,                                 :
GERALD BRITTON, individually,          :
SCHUYLKILL COUNTY, and                 :
JOHN AND/OR JANE DOE,                  :
                                       :
              Defendants.              :

# M E M O R A N D U M

March 7, 2006

## BACKGROUND:

On May 21, 2004, Plaintiff David Meyers instituted this Section 1983 civil

rights action against numerous defendants connected with the Schuykill County

Prison ("SCP").  Named as defendants are Schuylkill County Prison, the Schuylkill

County Prison Board, former Warden Gerald Britton, Gerald Britton individually,

Schuylkill County, and Doe defendants identified as "those corrections officers and

other prison officials whose responsibility was to provide medical care and

treatment to the inmates."  (Am. Compl., Rec. Doc. No. 4, at 2.)  Plaintiff has not specifically identified the Doe defendants.

Plaintiff has alleged that the acts and omissions of defendants resulted in his subjection to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

On May 25, 2002, plaintiff suffered a broken left wrist during a basketball game in the prison yard at SCP.[1]  Thereafter, plaintiff waited 39 days before being examined by a doctor, 55 days before being x-rayed, and 61 days before a cast was placed on his broken wrist.  Since his release on July 30, 2002, plaintiff has had three surgeries on his left wrist and has experienced pain and difficulty in performing manual labor due to his injury.

The parties have completed discovery.  Now before the court is a motion for summary judgment on behalf of all defendants.  Defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Defendants former Warden Gerald Britton and the Schuylkill County Prison Board

---

[1]Defendants maintain that the injury occurred on June 8, 2002, the date an Incident Report was first generated regarding plaintiff's injury.  As discussed below, we adopt May 25, 2002 as the date of injury.  Ultimately, however, whether the injury occurred on May 25 or June 8 bears little impact our analysis.

2

("SCPB" or the "Board") further argue that they are entitled to summary judgment because they lacked the personal knowledge and involvement necessary to trigger liability under Section 1983.  Britton and the Board also argue that they are entitled to qualified immunity.  Finally, defendants argue that neither the Schuylkill County Prison nor the Board are "persons" within the meaning of Section 1983.

For the following reasons, we will deny the motion for summary judgment, except as it relates to the Schuylkill County Prison, which is not a "person" amenable to suit under 42 U.S.C. § 1983.  The parties will be directed to brief the matter of the Doe defendants within thirty days of the date of this order.

## DISCUSSION:

## I.  Legal Standard

1. *Summary Judgment*

A district court may properly grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A genuine issue of material fact is one that may reasonably be resolved in favor of either party. Id. In determining whether there is a disputed issue of material fact, the court will draw all reasonable inferences and any ambiguities in favor of the nonmoving party. Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995) (citation omitted).

The party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party "has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E., 173 F.3d 238, 252 (3d Cir. 1999) (citations omitted); see also Fed. R. Civ. P. 56(e). "Speculation and conclusory allegations do not satisfy this duty." Ridgewood Bd. Of Educ., 173 F.3d at 252 (citation omitted). Furthermore, the "mere existence of a scintilla of evidence in

4

support of the [nonmoving party's] position will be insufficient." <u>Anderson</u>, 477

U.S. at 252.

2. *42 U.S.C. § 1983*.

Section 1983 does not create substantive rights, but rather provides a remedy

for the violation of rights created by federal law.  <u>Groman v. Twp. of Manalapan</u>,

47 F.3d 628, 633 (3d Cir. 1995).  The statute provides for a cause of action against

persons who, acting under color of state law, deprive another individual of any

rights, privileges, or immunities secured by the Constitution.  42 U.S.C. § 1983.  In

order for a plaintiff to prevail under Section 1983, he must establish two elements:

(1) that the defendants were "state actors," and (2) that they deprived the plaintiff

of a federal right.  <u>See</u> <u>Groman</u>, 47 F.3d at 633.

## II.  Facts

In a motion for summary judgment, we draw all reasonable inferences and

any ambiguities regarding the facts in favor of the nonmoving party.  <u>Am. Flint.</u>

<u>Glass Workers Union</u>, 62 F.3d at 578.[2]

---

[2]We note with disappointment plaintiff's failure to adhere to the strictures of
Local Rule 56.1, which governs motions for summary judgment.  That rule requires
that "[t]he papers opposing a motion for summary judgment shall include a
separate, short and concise statement of the material facts, <u>responding to the
numbered paragraphs set forth in the statement [filed by the moving party], as to
which it is contended that there exists a genuine issue to be tried</u>."  Local Rule 56.1

Plaintiff David Meyers was incarcerated at the Schuylkill County Prison ("SCP") from January 18, 2002, until his release on July 30, 2002.  While playing basketball in the prison yard, plaintiff fell and broke his left wrist.  Plaintiff testified in his deposition that when he fell, he heard a snap and his wrist swelled instantly.[3]

Plaintiff asserts that the date of his injury was Saturday, May 25, 2002. Defendants contest this date and instead point to June 8, 2002, as the date of the initial Incident Report filed by Corrections Officer ("CO") Jeff Harner.[4]  In his report dated June 8, CO Harner wrote: "After coming in from outside yard, Resident Myers, David reported to this C/O that he had hurt his wrist playing basketball.  The back of his hand appeared to be swollen along with his fingers.  Lt.

_____

(emphasis added).  Plaintiff's statement of facts fails to correspond in any way to defendants' statement.  The Local Rules for the United States District Court for the Middle District of Pennsylvania may be found at http://www.pamd.uscourts.gov/docs/LR12012005.pdf.

[3]Doctor Larock first examined plaintiff on July 3, 2002.  His notes state that plaintiff did not hear any cracking sound when he fell: "injured L wrist 5/28/02 playing BB landed on wrist and went backward.  Did not hear any cracking. Swelled & got ecchymotic." (See Dep. of Patricia Hoak, R.N., Ex.4, at 4, Rec. Doc. No. 21-5, at 86.)  Ecchymosis is "a discoloration due to extravasation of blood, as in a bruise." The Random House Dictionary of the English Language 617 (2d ed. 1987).

[4]Doctor Larock's notes from the July 3, 2002 physical examination state that plaintiff sustained the injury on May 28, 2002. (See Dep. of Nurse Patricia Hoak, Rec. Doc. No. 21-5, at 50, 86.)

Gehres was informed, and ice was given to resident." (Pl.'s Brief in Opp., Rec. Doc. No. 21, Ex. 12.) This Accident/Incident Report form was initialed by Captain David Wapinsky on June 20, 2002. (See Dep. of Gerald Britton, Rec. Doc. No. 21, Ex. 2, at 72.))

We will adopt May 25, 2002, as the date of injury, construing this disputed fact in favor of the nonmoving party. This is a reasonable inference and is consistent with plaintiff's testimony as a whole.[5] Nevertheless, even were we to adopt a later date of injury, our analysis would be the same.

The first documentation of plaintiff's injury was on June 8, 2002, with CO Harner's incident report. It was not until July 3, 2002 that plaintiff was seen by a doctor. That was a full 39 days after the initial injury, and 25 days after the incident report. The doctor ordered an x-ray, which was not taken until July 19, 2002, a full 55 days after plaintiff suffered the injury, 41 days after CO Harner prepared the incident report, and 16 days after the x-ray was ordered. Meyers waited six more days, until July 25, 2002, to have his wrist casted. Meyers thus spent 61 days with

---

[5]On-site medical staff was available at SCP only during the business week. On the weekends, a nurse would be on-call, and it would be a Lieutenant's decision whether to contact a nurse in response to a health issue. Plaintiff testified that although he broke his wrist on Saturday, he did not see a nurse until Tuesday, because Monday was a holiday. Memorial Day was observed on Monday, May 27, 2002.

an uncasted broken wrist–47 days after CO Harner prepared the incident report.

The grievance procedure in place during plaintiff's incarceration was
contained in the Schuylkill County Prison Resident Rules and Regulations, which
Meyers received upon admission to SCP.  On page 6, the Rules and Regulations
state:

### 9.  Communication and Grievance Procedure

A.    The following procedures have been
established to insure that all inmates have the
opportunity for formal communication with
members of the Prison Administration.

B.    All communications of an official nature are
to be submitted in accordance with the
guidelines below.

C.    The Prison Administration encourages
meaningful communication . . . .

D.    **Resolving routine problems:** You are
directed to follow these steps in resolving
routine problems

   a.  consult with the officer
       supervising your housing unit . . . .
   b.  consult with the Supervisor.
   c.  request permission for an Inmate
       Request Form.

E.    **Emergency Communication:** Routine
procedures are suspended for emergency
purposes.  In such cases, consult the nearest
staff member available.

F.    **Routine Communication:**

   Inmate Request Form: This form
   alerts the staff member to whom it is
   directed that you wish to consult him/her

8

on                  a specific matter.
                           You are required to state the nature of
                    your request and all relevant information.
                           The form provides for the staff
                    member's written response which will be
                    forwarded to you in the event an interview
                    with the staff member is not necessary.

G.     **Grievance Procedure:** This can be handled
       by requesting an Inmate Request Form and
       send it out to the appropriate member of
       staff.
                           Note: Appeals to disciplinary actions
                    must be in writing to the Warden.

(See Rec. Doc. No. 21, Ex. 17.)

According to Gerald Britton, warden of SCP during the period of plaintiff's

incarceration, the grievance process required that a grievance be "submitted in

writing on an Inmate Request Form, Inmate Grievance Form or any other writing."

(Aff. of Gerald Britton, Rec. Doc. No. 19, at 1; see also Rec. Doc. No. 20, at 8)

(emphasis added).  "No specific form or format is required for the submission of a

grievance."  (Rec. Doc. No. 19, at 2; see also Rec. Doc. No. 20, at 8.)  According

to the "Offender Grievance Procedure," an internal document defendants state "is

designed to provide guidance to the prison staff in the disposition of inmate

grievances" (Reply of Defs., Rec. Doc. No. 24, at 9), "[a]n inmate may file a

grievance at any time to bring a problem to staff's attention" (Aff. of Gerald

Britton, Rec. Doc. No. 19, Ex. B).

9

Although plaintiff avers that he made numerous verbal complaints to prison staff members, he made three written complaints regarding his left wrist.

After his x-ray on July 19, 2002, plaintiff wrote an undated letter to Nurse Patricia Hoak complaining of a delay in treatment.  (Rec. Doc. No. 21, Ex. 20.) Nurse Hoak wrote back on July 22, assuring plaintiff that an appointment had been scheduled with an orthopedic specialist.  (Id.)

In a letter dated July 22, plaintiff wrote to Deputy Warden Eugene Bardanier. (Rec. Doc. No. 21, Ex. 22.)  In this letter, plaintiff complained that he has been living in pain with a broken wrist for two months, despite his verbal complaints, and informed the deputy warden that he planned to pursue legal action.

Plaintiff wrote a final, undated letter, this time to the warden.  (Rec. Doc. No. 21, Ex. 23.)  This letter was written after the wrist was casted because plaintiff refers to his appointment with the orthopedic specialist Dr. Shakil on July 25, 2002.

Plaintiff was released from SCP on July 30, 2002.

### III.  Analysis

1.  *A genuine issue of material fact exists as to whether plaintiff exhausted his administrative remedies.*

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner

to exhaust his administrative remedies before bringing a civil rights action in federal court.   Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004).  The PLRA exhaustion requirement applies to grievance procedures "regardless of the relief offered by the administrative procedures."  Booth v. Churner, 532 U.S. 731, 741 (2001); see also Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000) (explaining that "the PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory–whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action.").  Section 1997e(a), as amended by the PLRA, "completely precludes a futility exception to its mandatory exhaustion requirement."  See Nyhuis, 204 F.3d at 69 n.4, 71.

Under Warden Gerald Britton, SCP employed a fairly lenient grievance procedure.  A prisoner could submit a grievance "in writing on an Inmate Request Form, Inmate Grievance Form or any other writing."  (Aff. of Gerald Britton, Rec. Doc. No. 19, at 1; see also Rec. Doc. No. 20, at 8) (emphasis added).  "No specific form or format is required for the submission of a grievance."  (Rec. Doc. No. 19, at 2; see also Rec. Doc. No. 20, at 8.)  The parties have directed us to no time frame during which a grievance must be filed, and the Offender Grievance Procedure provided that "[a]n inmate may file a grievance at any time to bring a problem to staff's attention."  (Aff. of Gerald Britton, Rec. Doc. No. 19, Ex. B.)

11

Plaintiff did write three written complaints to SCP staff: a letter to nurse Hoak, a letter to Deputy Warden Berdanier, and a letter to Warden Britton.  (See Rec. Doc. No. 21, Exs. 20, 22, 23.)  All of these letters were written after plaintiff was x-rayed at Pottsville Hospital, in the latter days of July, immediately before plaintiff was released on July 30.

Defendants argue that because these letters were written after plaintiff had received the medical treatment he desired, they cannot constitute an exhaustion of administrative remedies under the PLRA.  However, the fact that the situation compelling the prisoner's grievance has passed does not make a grievance untimely.      In Carston v. Sacks, 157 F. App'x 504 (3d Cir. 2005), the Third Circuit found a genuine issue of material fact as to whether a prisoner complied with prison grievance procedures and properly exhausted his claims.  In that case, the prisoner claimed a violation of his constitutional rights when prison officials allegedly denied him food and water while housed in a psychiatric observation cell during four days in the month of March.  Id. at 505.  In April, the prisoner filed his grievance regarding the March deprivation.  Thus, even though the prisoner in Carston was receiving food and water at the time he wrote his grievances, the Third Circuit found that his grievance in April, which addressed a deprivation that had ended in March, may have satisfied the PLRA.

12

Likewise, the fact that plaintiff here had begun to receive medical treatment by the time he submitted his grievances did not render the grievances in late July untimely.

It appears that the plaintiff satisfied the lenient grievance procedure in place at SCP during his incarceration.  Viewing the evidence in the light most favorable to Meyers, the non-moving party, there is at least a genuine issue of material fact as to whether Meyers properly exhausted his administrative remedies at SCP.[6]

2.    *Warden Britton and the SCPB are not entitled to summary judgment because a genuine issue of material fact exists as to whether the defendants inferred a substantial risk of serious harm to inmates' health due to a shortage in medical staff at the prison.*

The Eighth Amendment prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Rouse v. Plantier, 182 F.3d 192, (3d Cir. 1999) (Alito, J.) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).  In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court

---

[6]There was no administrative resolution of plaintiff's grievances to the warden and deputy warden; these letters were written after plaintiff received medical care and immediately before his release.  According to the SCP Offender Grievance Procedure, "Offenders who have a pending grievance at the time of release lose all standing with respect to any further internal administrative remedy of the matter under consideration."  (Rec. Doc. No. 19, at 21.)  Because plaintiff no longer had standing to pursue his grievance at SCP, there was no available administrative remedy to exhaust after his release.  See 42 U.S.C. § 1997e(a).

held that the Eighth Amendment's prohibition against cruel and unusual punishment

requires prison officials to provide basic medical treatment to those whom it has

incarcerated.  The Court stated:

> In order to state a cognizable claim, a prisoner must allege
> acts or omissions sufficiently harmful to evidence
> deliberate indifference to serious medical needs.  It is only
> such indifference that can offend "evolving standards of
> decency" in violation of the Eighth Amendment.

Id. at 106.

Therefore, to succeed under these principles, plaintiff must demonstrate (1)

that the defendants were deliberately indifferent to his medical needs and (2) that

those needs were serious.  Rouse, 182 F.3d at 197.  For the purposes of this

motion for summary judgment, defendants concede that plaintiff's medical needs

were serious.  The question, then, is whether Warden Britton or the SCPB were

deliberately indifferent to Meyers's serious medical needs.

"Deliberate indifference" requires "obduracy and wantonness," "which has

been likened to conduct that includes recklessness or a conscious disregard of a

serious risk."  Id. (citations omitted).  The Third Circuit has found "deliberate

indifference" in a variety of circumstances, including where the prison official (1)

knows of a prisoner's need for medical treatment but intentionally refuses to

provide it; (2) delays necessary medical treatment based on a non-medical reason;

or (3) prevents a prisoner from receiving needed or recommended medical treatment.  Id.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Defendants contend that neither Warden Britton nor the SCPB were aware of plaintiff's plight, and that they cannot be found to have been deliberately indifferent to his medical needs.  Plaintiff responds by arguing that throughout the period of plaintiff's incarceration, both the Warden and the SCPB were aware that there were problems with the delivery of healthcare at SCP.  Warden and nursing staff alike complained of a shortage of nurses, and the prison doctor routinely failed to show for his scheduled visits in June 2002, while plaintiff was injured.[7]  (See, e.g., Dep.

---

[7]On June 12, a special meeting of the SCPB was called to discuss the prison physician contract.  (Rec. Doc. No. 21, Ex. 8.)  At that meeting, Warden Britton informed the SCPB that the present doctor, Dr. Narang, was denied access to the prison.  A member of the board, Commissioner Forrest Shadle, stated his position that the SCPB had "just cause to terminate Dr. Narang immediately."  (Id.)

of Christine Banonis, R.N., Rec. Doc. No. 21, Ex. at 32-33.)  Furthermore, little or no medical training was provided to prison staff at SCP.

The Schuylkill County Prison Board, along with the Warden, were responsible for ensuring that the prison was properly staffed with adequate medical personnel to deliver treatment in a timely and humane fashion.  The government has an "obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."  Estelle, 429 U.S. at 103.  "It is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."  Id. at 104 (quoting Spicer v. Williamson, 490 S.E. 291, 293 (1926)).

Plaintiff argues that Warden Britton and the SCPB were deliberately indifferent in failing to hire more medical staff and failing to develop a medical training program at the prison.  Plaintiff argues that these failures directly led to the delay in treating his broken wrist.  Warden Britton testified to his belief that a nursing staff of two was insufficient to properly treat the inmate population, and brought this to the attention of the SCPB.  Furthermore, when asked if the nurse shortage could result in "problems in getting proper medical care to inmates," Warden Britton responded: "Well, that–it only stands to reason that if you have to

16

wait to call somebody in, you have a time lapse.  If somebody is on duty there, they should be able to deal with it in a–in faster (trailed off)."  (Rec. Doc. No. 21, Ex. 2, at 103-04.)

Likewise, when the prison doctor exhibited a pattern of failing to show for sick call, the SCPB held a special meeting to discuss the problem, whereupon they resolved to fire the present doctor.  The Warden and the SCPB were aware that the contracted doctor was not showing up for sick call; they also were aware that the nursing staff, while dedicated, was understaffed.

Warden Britton and the SCPB may not have had specific knowledge about the specific injury and delay suffered by plaintiff.  However, the Supreme Court in Farmer v. Brennan suggested that specific knowledge is not required, so long as the prison official was aware of an obvious, substantial risk to inmate safety in general.  "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer, 511 U.S. at 842.

In Farmer, a transgender inmate was beaten and raped by a fellow inmate in the general population, and argued that prison officials were aware that the penitentiary in question "had a violent environment and a history of inmate

17

assaults."  511 U.S. at 831.  In that case, the Court stated:

> Nor may a prison official escape liability for deliberate
> indifference by showing that, while he was aware of an
> obvious, substantial risk to inmate safety, <u>he did not
> know that the complainant was especially likely</u> to be
> assaulted . . . The question under the Eighth Amendment
> is whether prison officials, acting with deliberate
> indifference, exposed a prisoner to a sufficiently
> substantial risk of serious damage to his future health, and
> it does not matter whether the risk comes from a single
> source or multiple sources, any more than it matters
> whether a prisoner faces an excessive risk of attack for
> reasons personal to him or because <u>all prisoners in his
> situation face such a risk</u>.

<u>Id.</u> at 843 (emphasis added).  Of course, "prison officials who actually knew of a

substantial risk to inmate health or safety may be found free from liability if they

responded reasonably to the risk, even if the harm ultimately was not averted."  <u>Id.</u>

at 844.  Such a determination lies with the trier of fact, and not with the court on a

motion for summary judgment.

Accordingly, plaintiff has raised a genuine issue of material fact as to whether

Warden Britton and the SCPB "kn[ew] of and disregard[ed] an excessive risk to

inmate health or safety" caused by a shortage of medical personnel at the prison.

<u>Id.</u> at 837.

3.      *Warden Britton and the SCPB are not entitled to qualified immunity.*

The doctrine of qualified immunity shields government officials performing

18

discretionary functions from liability for civil damages so long as their conduct does not violate "clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).  One of the purposes of qualified immunity is "to spare a defendant not only unwarranted liability but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000) (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  "The entitlement is an immunity from suit rather than a mere defense to liability . . . and is effectively lost if a case is erroneously permitted to go to trial." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

When the defendant in a Section 1983 action claims qualified immunity, we must ask this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Atkinson v. Taylor, 316 F.3d 257, 261 (3d Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001).  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id.  "The standard for granting or denying a motion for summary judgment does not change in the qualified

19

immunity context.  Viewing the facts in the light most favorable to the plaintiff, a court must determine whether the defendant should prevail as a matter of law." Curley v. Klem, 298 F.3d 271, 282 (3d Cir. 2002) (quotations and citations omitted).

The Third Circuit has held that "Estelle makes clear that if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Plaintiff has thus alleged a violation of his constitutional rights under the Eighth Amendment, as treatment for his broken wrist was significantly delayed.  The right to be free from the unnecessary and wanton infliction of pain resulting from a delay in the provision of adequate medical care was clearly established by Estelle and Lanzaro.  Defendants are not entitled to qualified immunity because the alleged failure to ensure adequate medical care at the prison may have resulted in the violation of "clearly established constitutional rights of which a reasonable person would have known."  Harlow, 457 U.S. at 818 (1982).

4.     *Are the Schuylkill County Prison and SCPB "persons" within the meaning of 42 U.S.C. § 1983?*

20

The Schuylkill County Prison is not a "person" within the meaning of

Section 1983.  See, e.g., McLeod v. Still, No. Civ. 05-4635, 2006 WL 372989, at

*4 (D.N.J. Feb. 16, 2006) (Monmouth County Correctional Institution is not a

"person" amenable to suit under § 1983) (citing Fischer v. Cahill, 474 F.2d 991,

992 (3d Cir. 1973) (state prison medical department not a "person" under § 1983);

Marsden v. Fed. BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an

entity amenable to suit under § 1983); Powell v. Cook County Jail, 814 F. Supp.

757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under § 1983); McCoy

v. Chesapeake Corr. Center, 788 F. Supp. 890, 893-94 (E.D. Va. 1992) (local jail

not a "person" under § 1983); Brooks v. Pembroke City Jail, 722 F. Supp. 1294,

1301) (E.D.N.C. 1989) (city jail not a "person" amenable to suit under § 1983)).

The action will therefore be dismissed as to the Schuykill County Prison.

Defendants also argue that the Schuylkill County Prison Board is not a

"person" within the meaning of Section 1983.  However, municipalities and other

local government units are among those "persons" to whom Section 1983 applies.

Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

According to Frank Cori, Schuylkill County District Attorney and member of the

Schuylkill County Prison Board, the SCPB "is a statutorily mandated group of

elected officials" who "oversee the operations of the prison."  (Dep. of Frank Cori,

Rec. Doc. No. 21, Ex. 28, at 6-7.)  As an arm of Schuylkill County, the SCPB is

regarded as a "person" subject to liability for violations of Section 1983 under

Monell.  See, e.g., Cortlessa v. County of Chester, No. Civ.A. 04-1039, 2005 WL

2789178, at *7-8 (E.D. Pa. Oct. 26, 2005).

While the SCPB is not responsible for the acts of those it supervises under a

theory of vicarious liability or respondeat superior, Monell, 436 U.S. at 691, it is

subject to liability to the extent it maintains an unconstitutional custom or policy that

caused the alleged constitutional violation.  See, e.g., Natale v. Camden County

Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

5.      *The Doe defendants.*

Plaintiff has filed suit against Doe defendants identified as "those corrections

officers and other prison officials whose responsibility was to provide medical care

and treatment to the inmates."  (Am. Compl., Rec. Doc. No. 4, at 2.)  However,

nearly two years into this litigation, plaintiff has not specifically identified the Doe

defendants despite the close of discovery.  Defendants did not move in their

motion for summary judgment for the dismissal of the unnamed Doe defendants,

but in their reply to plaintiff's opposition, stated: "The John and/or Jane Doe

defendants identified in the caption have never been identified, mandating their

dismissal or judgment in their favor."  (Rec. Doc. No. 24, at 11.)  Defendant cites

no supporting legal authority for this remedy, and plaintiff has not addressed the issue.

We will direct plaintiff to file a motion to amend the complaint to substitute names for John and/or Jane Doe.  Counsel should bear in mind the framework provided by Federal Rule of Civil Procedure 15 and relevant caselaw including the Third Circuit's decision in <u>Singletary v. Pennsylvania Dept. Of Corrections</u>, 266 F.3d 186 (3d Cir. 2001).

## **CONCLUSION:**

For the foregoing reasons, the defendants' motion for summary judgment will be granted in part, and denied in part.  The matter will be dismissed as to the Schuylkill County Prison, as it is not a "person" amenable to suit under Section 1983.  The Warden and the SCPB are entitled to neither summary judgment nor qualified immunity.  Plaintiff will be directed to file an amended complaint substituting names for John and/or Jane Doe.


   s/ James F. McClure, Jr.   
James F. McClure, Jr.
United States District Judge

23

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID MEYERS,                          :
                                       :     Case No. 4:CV-04-1123
                    Plaintiff,         :
                                       :
        v.                             :
                                       :
SCHUYLKILL COUNTY PRISON,              :
GERALD BRITTON, in his official        :
capacity as Warden of Schuylkill       :     (Judge McClure)
County Prison,                         :
SCHUYLKILL COUNTY PRISON               :
BOARD,                                 :
GERALD BRITTON, individually,          :
SCHUYLKILL COUNTY, and                       :
JOHN AND/OR JANE DOE,                  :
                                       :
                    Defendants.        :

**O R D E R**

March 7, 2006

For all the reasons set forth in the accompanying memorandum, **IT IS**

**HEREBY ORDERED THAT:**

1.      Defendants' motion for summary judgment is granted in part, and

        denied in part.  (Rec. Doc. No. 19.)

2.      Defendants Warden Britton and the Schuylkill County Prison Board

        are neither entitled to summary judgement nor qualified immunity.

1

3.      The action is dismissed as to Schuylkill County Prison, which is not a

        "person" amenable to suit under 42 U.S.C. § 1983.

4.      The Schuylkill County Prison Board is a "person" amenable to suit

        under 42 U.S.C. § 1983.

5.      If plaintiff wishes to substitute named persons for John and/or Jane

        Doe, he shall file a motion to amend the complaint to that effect on or

        before March 21, 2006, accompanied by a supporting brief.

        Subsequent briefing will be in accordance with the local rules.  If

        plaintiff fails to file such motion and brief on or before March 21,

        2006, John and/or Jane Doe will be dismissed as defendants.


                                    _s/ James F. McClure, Jr._
                                    James F. McClure, Jr.
                                    United States District Judge

2